HARVEY HOFFMAN ET AL. *v.* INLAND WETLANDS
COMMISSION OF THE TOWN OF AVON
(10235)

DUPONT, C. J., DALY and FOTI, Js.

Argued March 23—decision released July 14, 1992

*Helene Sfikas Myers,* with whom, on the brief, was *Roger Eisenstein,* for the appellants (plaintiffs).

*Michael A. Zizka,* with whom, on the brief, was *Colleen M. Wolter,* for the appellee (defendant).

DUPONT, C. J. This appeal arises from the denial by the town of Avon's inland wetlands commission (commission) of the plaintiffs'[1] request for a permit to conduct regulated activities in and around wetlands. The proposed activities concern the construction of a dwelling and driveway within wetlands and within forty feet of wetlands, on a lot owned by the plaintiffs.

Pursuant to General Statutes § 22a-39 (h), the plaintiffs applied to the commission for a permit for the subject property, known as lot thirty-four, and for another nearby lot they owned. A public hearing was held and the commission unanimously denied the request for a

---

[1] The named plaintiff is the record owner of the subject property. Morton Weiner, the other plaintiff, is an equitable owner of the property pursuant to a partnership agreement.

permit for lot thirty-four because "the proposed plan would result in a significant impact on the wetlands." The application for the second lot was denied without prejudice. The plaintiffs appealed from the denial of the permit for lot thirty-four to the Superior Court. General Statutes § 22a-43. The appeal was dismissed, and an appeal was then taken to this court.

The parties agree that the lot contains inland wetlands and that the proposed construction required a permit from the commission pursuant to General Statutes § 22a-41. The commission does not contest the plaintiffs' standing to bring this appeal.

In 1981, the plaintiffs acquired lot thirty-four, which is almost an acre, half of which is wetlands. They also own two other lots, one adjacent to lot thirty-four and one across the street from it. Lot thirty-four is located in a residential zone and is part of a subdivision approved in the early 1960s.

The plaintiffs first question whether the trial court was correct in determining that the plaintiffs had the burden of proving that "a feasible and prudent alternative" to the plaintiffs' plan for construction did not exist. General Statutes § 22a-41 (b) provides in pertinent part that "a permit [for the conduct of a regulated activity] shall not be issued unless the [commission] finds that a feasible and prudent alternative [to the activity] does not exist. . . ." The plaintiffs alleged in their complaint that "there is no feasible and prudent alternative to the plan presented" and they make the same claim on appeal to this court.

The plaintiffs argue that they did not have such a burden and further that the commission's minutes contain a finding that feasible and prudent alternatives do not exist, thereby making it unnecessary for them to have presented to the commission any evidence about alternative plans.

The question as to which party has the burden of proof concerning "feasible and prudent alternatives" has been settled. It lies with the plaintiff-applicant. In *Huck* v. *Inland Wetland & Watercourses Agency,* 203 Conn. 525, 525 A.2d 940 (1987), the court found the trial court in error "insofar as it placed the burden on the agency to demonstrate that there were alternatives . . . ." Id., 553. Furthermore, in the present case, as in *Huck,* the plaintiffs assumed the burden of proof on this issue because their complaint alleged that no such alternative existed. Id., 553 n.18.

The plaintiffs argue, nevertheless, that *Red Hill Coalition, Inc.* v. *Conservation Commission,* 212 Conn. 710, 563 A.2d 1339 (1989), exonerates them from proving that no such alternative exists. Although *Red Hill* states that applicants are not compelled to submit formal plans or drawings for all possible alternatives, the court does not place any burden on the inland wetlands agency to do so. Instead, the court recognizes that the commission could consider alternatives submitted by the applicants or by other interested parties, and clarifies that the applicant need not submit plans for all possible alternatives. Nothing in *Red Hill* disturbs the holding of *Huck.* The trial court was, therefore, correct in its placement of the burden of proof on the plaintiffs.

The plaintiffs also argue that the commission, according to its minutes, found that no feasible and prudent alternative existed. A review of the minutes of the commission's September 5, 1989 meeting discloses that the plaintiffs' applications for two lots were considered. Several commissioners indicated their desire for alternative plans for one property and denied that application without prejudice. They next turned to lot thirty-four. One commissioner "questioned the likelihood that, even with sufficient creativity, an alternative exists, [for either lot], that would satisfy the

commission given the impact . . . to the wetland." The commission then denied the second permit unanimously. Our reading of the minutes does not convince us that the commission made any finding regarding alternative plans for developing lot thirty-four. The fact that one commissioner questioned the existence of an alternative is not equivalent to the commission's finding that no alternative existed. *Schwartz* v. *Town Planning & Zoning Commission,* 168 Conn. 285, 290, 362 A.2d 1378 (1975). The record supports the trial court's determination that no such finding was made by the commission.

The plaintiffs also claim that the commission should not have considered their ownership of a lot adjoining lot thirty-four and that the trial court should have sustained their appeal on that basis. The minutes of the September 5 meeting reflect that the town planner, who is not a member of the commission, indicated that in addition to the two lots described in the plaintiffs' permit applications, they owned a third lot that adjoined lot thirty-four. The town planner "thought it important to consider the overall picture of how all three of the lots may or may not be developed." The ownership of the abutting lot was also indicated on the plaintiffs' maps. The commission did not expressly consider the use of the adjoining lot in determining whether a feasible and prudent plan did not exist, although that alternative was suggested later by the defendant's counsel and by the trial court. The plaintiffs argue that under General Statutes § 4-183 (j) (6) and *E.I.S., Inc.* v. *Board of Registration,* 200 Conn. 145, 509 A.2d 1056 (1986), the commission exceeded its authority by considering the adjoining parcel at its hearing. We disagree.

In *Red Hill Coalition, Inc.* v. *Conservation Commission,* supra, the commission permitted a landowner to fill one wetlands area and to construct a road over another in return for a promise to create new wetlands

on other land it owned. The court ruled that General Statutes § 22a-41 (a) allowed the commission to "take into consideration all relevant facts and circumstances, including but not limited to [the six named factors]."[2]

Our statutes do not require the commission to consider each application as an entity unto itself, devoid of any context. In *Madrid Corporation* v. *Inland Wetlands Agency,* 25 Conn. App. 446, 594 A.2d 1037, cert. denied, 220 Conn. 915, 597 A.2d 334 (1991), we upheld the consideration of wetlands that were not located on the applicant's property. Whether an owner seeking a permit has an interest in an adjoining lot is relevant to a determination of whether a permit should be granted. See *Gil* v. *Inland Wetlands Agency,* 219 Conn. 404, 407, 593 A.2d 1368 (1991).

Indeed, the legislative findings in General Statutes § 22a-36 recognize that wetlands and watercourses are "an interrelated web of nature," which must be protected and preserved. To require a commission to regard each parcel with blinders, ignoring the overall

---

[2] General Statutes § 22a-41 provides: "(a) In carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

"(1) The environmental impact of the proposed action;

"(2) The alternatives to the proposed action;

"(3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;

"(4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;

"(5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and

"(6) The suitability or unsuitability of such activity to the area for which it is proposed.

"(b) In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record."

development of an area and, in particular, the ownership of abutting parcels, would defeat the statute's purposes. The commission must be allowed to use its own knowledge of a site and local conditions, including other properties owned by the applicant, in its deliberations. See *Manor Development Corporation* v. *Conservation Commission*, 180 Conn. 692, 433 A.2d 999 (1980); *Welch* v. *Zoning Board of Appeals*, 158 Conn. 208, 216, 257 A.2d 795 (1969).

The plaintiffs next claim that, if the decision of the commission is upheld, the decision constitutes a taking because the diminution in value of the property exceeds any health, safety, or welfare benefits.

The test for determining whether a taking has occurred cannot be resolved on the basis of the denial of a single application, as in this case, or even the denial of multiple applications. *Gil* v. *Inland Wetlands Agency,* supra. Instead, the reviewing court must first establish that there was a final authoritative decision by a commission and then conduct a two-pronged analysis. That analysis must result in two conclusions. First, the landowner's expectation of development must be found to be factually reasonable and second, the denial of the application must constitute a taking either as a practical confiscation of property or by application of a balancing test. Id. It is the plaintiffs' burden to prove that there was a final authoritative decision, that the expectation for development was reasonable and that the property cannot be used for any reasonable purpose or that the denial of a permit caused the owner great economic deprivation without a significant public benefit. *D'Addario* v. *Planning & Zoning Commission,* 25 Conn. App. 137, 147–48, 593 A.2d 511 (1991).

The plaintiffs claim that there was an unconstitutional taking of their property because the denial of their application for a permit rendered the property useless. Before that claim is reached, the plaintiffs must

show that they have been *finally* deprived by the commission of their use of the property. *Gil* v. *Inland Wetlands Agency,* supra; *Manor Development Corporation* v. *Conservation Commission,* supra; *Brecciaroli* v. *Commission of Environmental Protection,* 168 Conn. 349, 362 A.2d 948 (1975); *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 153 A.2d 822 (1959).

The rejection of the plaintiffs' application for a permit does not imply that less ambitious plans will receive a denial as well. *Gil* v. *Inland Wetlands Agency,* supra. On the basis of the record before us, it cannot be known whether the plaintiffs may yet be permitted, after the submission of some subsequent application, to use a smaller portion of the lot, or to position the house and driveway differently, or to provide for a different type of drainage.

Because a future application with a different plan for construction and excavation may be granted, there has not yet been a final authoritative decision by the commission.[3] Without such a decision, a taking cannot have occurred.[4] *Gil* v. *Inland Wetlands Agency,* supra; *Brec-*

---

[3] This case is unlike those in which the action of a town agency involves a zone change, thereby establishing a final authoritative decision that affects a landowner. See *Dooley* v. *Town Planning & Zoning Commission,* 151 Conn. 304, 311, 197 A.2d 770 (1964); *D'Addario* v. *Planning & Zoning Commission,* 25 Conn. App. 137, 593 A.2d 511 (1991).

[4] Since we hold that a taking has not yet occurred, we need not reach the claim of the plaintiffs that the named plaintiff, a real estate broker, should have been allowed to testify as to the diminished value of lot thirty-four if the permit were not granted. Such testimony would be relevant to the question of whether the plaintiffs purchased the lot with the reasonable expectation of developing it or that the denial caused the owners great economic deprivation without a significant public benefit. See *Gil* v. *Inland Wetlands Agency,* 219 Conn. 404, 414, 593 A.2d 1368 (1991).

Even if the plaintiffs established a reasonable expectation of commercial or residential development, they "cannot prevail unless the agency's denial on the merits of [their] application for a building permit constituted a taking"; id., 415; and a judicial review of those merits cannot be had until the plaintiffs establish the finality of the agency decision.

*ciaroli* v. *Commissioner of Environmental Protection,* supra. We can not, therefore, reach the merits of the plaintiffs' claim that a taking occurred. *Gil* v. *Inland Wetlands Agency,* supra.

The trial court was correct in rendering judgment for the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.