[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Wilman J. Ferrer and Kathleen K. Ferrer have appealed the denial by the defendant, Litchfield Conservation Commission of their application for approval of a design for a septic system on their property located on the northwest side of Norfolk Road in Litchfield.
The plaintiffs are the record owners of the property, have a specific CT Page 1681 personal and legal interest in the subject property and are therefore aggrieved. Olsen v. Inland Wetlands Commission of the City of Torrington,6 Conn. App. 715, 718.
On July 31, 1980 the plaintiffs Wilman J. Ferrer and Kathleen K. Ferrer purchased for $18,000.00 an unimproved .68 acre nonconforming lot with deed restrictions for building and use, site drainage and sewage disposal in an R-80 (2 acre) zone on Norfolk Road, Litchfield, Connecticut. (R. 12 20) The parcel is known as Lot 11 on a subdivision map recorded by a prior owner in 1963 before Litchfield had adopted zoning, subdivision and inland wetland regulations, and is now subject to those regulations. (R 7, 10, 12 20). This parcel is pie-shaped and one of its three boundaries is the centerline of the Bantam River, so that actual land area not covered by water is less than the .68 acre. (R 15 16) Its usable land area is further reduced approximately one third by a steep bank to the river and river flood plain. (R. 15 16) The proposed construction of a house is a regulated activity as defined by Section 2.1.0 of the Litchfield Inland Wetlands and Watercourse Regulations because the entire parcel is either within 150 feet of a watercourse or 100 feet of a wetland, and part of the parcel is the Bantam River itself. (R. 4, p. 1; 15; 16; and 22, p. 2)
The plaintiff obtained approval from the Torrington Area Health District for an engineered septic system requiring 5 feet of fill for a three bedroom, two bath home with sample floor plan attached showing a house 27'6" x 30'0" with a total house footprint of 825 square feet. (R. 17, p. 2; 28, p. 7)
The plaintiffs' application to the Litchfield Conservation Commission was for a house 26' x 44' with a total house footprint of 1144 square feet. The plaintiff presented two versions, one with the house parallel to the road, and one with the house at an angle to the road, reversing the septic primary and reserve fields and keeping the same driveway. (R. 15 and 16) The Conservation Commission asked questions concerning reduction of the house size and number of bedrooms, but the plaintiffs were not willing to change the size of the house footprint or the number of bedrooms. (R. 26, p. 7)
The plaintiff's experts presented evidence of two areas of wetlands, one on each side of the property, the river and the steep slope to the river. (R. 4, 15 16) The plaintiff's engineer, Arthur Howland, gave testimony that the primary part of the septic system would be sixty (60) feet from one wetland, twenty-five (25) feet to another and sixty-five (65) feet to the edge of the river. The house in variation two (R. 16) is located fifteen (15) feet from one wetland and the septic twenty-five (25) feet. (R. 26, pp. 9-10) The steep bank to the river starts at the southwest corner of the house. (R. 26, p. 9; 15 16) Engineer Howland stated that CT Page 1682 the curtain drain shown on the map may affect the wetland.( R. 26, p. 10; 28, p. 11) The house drainage would discharge to a curtain drain which discharges toward the river. (R. 26, p. 7) Members of the Commission visited the site to gain firsthand knowledge and hired an expert to review the application and its site.
The Conservation Commission's expert, Housatonic Valley Associates, submitted a report stating that the Bantam River is a significant tributary to the Housatonic River and one of the regions most outstanding scenic and recreational resources with "the presence of plants and animals of special concern, of threatened or endangered status which inhabit the riparian lands. . .". (R. 22, pp. 2-3) The report questioned if there were alternatives to the drainage plan which would preserve the natural vegetation along the driveway and residence, suggested relocating the driveway to avoid drainage problems to the wetland, and suggested different configurations for the house, septic and driveway to minimize wetland impacts. The report specifically asked for modification of the house footprint to increase its distance to the river. (R. 22, p. 2) Problems that could arise include erosion, sedimentation, nutrients and pesticide run-off, leaching septic tank, household hazardous wastes, decrease of wildlife habitat and riverbank in stability. (R. 22, pp. 2-3)
The report spoke of "the gradual loss of riparian resources as one of Connecticut's most serious threats to wetlands and watercourses". The report recommended that if the Commission allowed any construction, mitigation measures should be taken to lessen potential impacts to the Bantam River, including deed restricted buffer or conservation easement to safeguard the steep bank and flood plain to the 100 year boundary, erosion, sediment and storm water control maintaining sheet flow across vegetated areas and bank stabilization planting after construction. (R. 22, pp. 3-4) The plaintiffs did provide a plan for sedimentation control during construction and a fence where the house was closest to the steep river bank, but did not propose reduction and reconfiguration of house and septic size, post construction stabilization and deed restrictions. (R. 28, p. 3)
The Commission, "Voted on a motion made by Aurthur Webster and seconded by Charlotte Organschi to deny the wetland application submitted by William and Kathleen Ferrer for the construction of house and septic system within regulated wetland areas on Norfolk Road for the following reasons:
 1. The close proximity of the house to the wetlands (30 feet) and disturbance caused to the river bank before and after construction;
2. The close proximity of the septic system to the river wetland CT Page 1683 boundary (63 feet) and the northern wetland boundary (25 feet);
 3. The need to protect the river and associated wetlands from sedimentation since it feeds into the Hamill Wellfield.
The burden is on the plaintiffs to prove that the Conservation Commission acted illegally or arbitrarily, or that its decision was not supported by the evidence in the record. Huck v. Inland Wetlands 
Watercourses Agency, 203 Conn. 525, 553. "The Agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons [for denial] given." Huck, supra at 540 (and the cases cited therein). An examination of the record discloses substantial evidence to support the reasons given.
"The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Huck v. Inland Wetlands Watercourses Agency, supra at 539, 540. The test is "substantial evidence" which, "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)." Huck, supra at 541-42.
Further, "an administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." Huck, supra at 542, citing Manor Development Corporation v. Conservation Commission, 180 Conn. 692, 697. Although the plaintiffs through counsel, an engineer and soil scientist presented two plans, with the identical house turned two different ways, an examination of the record and particularly those items listed above discloses that there is substantial evidence to support each of the three reasons. If only one reason were supported, that would be sufficient. Huck, supra at 543.
The plaintiffs own expert's testimony recited above gave some evidence which supports the reasons for denial. The Housatonic Valley Association provided more. The Commissioners, as revealed in the transcripts, and minutes of the meetings discussed the information gathered by on site viewing, and as in Huck, supra, engaged in extended and close questioning of the plaintiffs, experts, their counsel and a neighbor in opposition. "Knowledge obtained through personal observations of the locus may properly be considered." Huck, supra at 547. CT Page 1684
The Supreme Court, in reversing the trial court and upholding the agency stated, "This seems quite appropriate given the nature of the septic system as proposed and discussed, especially since the regulated area involved consists of shoreline and surface of Frye Lake, and when concededly approximately 80 percent of the lot itself was in Frye Lake." Huck, supra at 544.
In this case, the lot is bordered and partially covered by the Bantam River, a significant environmental asset. Here the agency repeatedly returned to questions about the size of the house at 1144 square feet which was 39% bigger than the 825 square foot house on the septic application, and about the number of bedrooms which, if reduced from 3 to 2, would mean a 33 1/3 percent decrease in the septic area required, both of which modifications would increase the distance to the steep river bank, the river and the two wetlands areas and would mean less disturbance.
There is substantial evidence to support the commission's decision and a trial court must not substitute its judgment for that of the commission. Huck, supra at 525.
The property proposed for development is 100% within the area regulated by Conn. Gen. Stat. Chapter 440 relating to wetlands and watercourses. It is a .68 acre pie-shaped parcel bordered and covered on one of its three sides by the Bantam River. Two wetlands areas are located on the property and the northerly wetland extends to a greater degree on the abutting parcel to the north. There is a steep river bank cutting across nearly a third of the property, leading directly to the Bantam River, "a significant tributary to the Housatonic River, and one of the regions most outstanding scenic and recreational resources." (R. 15, 16 and 22, p. 2.) The proposed home was a three bedroom two bath home with 1144 square feet of foundation footprint attached to the Torrington Area Health District application (R. 17, pp. 2 and 3). The septic system in the application is for a three bedroom house, and if the applicants submitted a two bedroom house, the septic would be one third less in size.
Housatonic Valley Association stated in its report that the application should not be permitted as of right under Conn. Gen. Stat. Sec. 22a-40 and that the application should be measured against the feasible and prudent alternative requirements of Conn. Gen. Stat. Sec.22a-41(b). (R. 22, pp. 1 and 2) The report pointed out that the applicant must demonstrate that no such alternative exists. (R. 22, p. 2) The burden of proof concerning feasible and prudent alternatives lies with the plaintiff applicant. Huck v. Inland Wetland Watercourses Agency, supra at 553; Hoffman v. Inland Wetlands Commission, 28 Conn. App. 262, 265. CT Page 1685
The Housatonic Valley Association report asked for alternate configurations for the house, septic and driveway, including modification of the house and the sewer. (R. 22, p. 2) Plaintiffs counsel pointed out that if the plaintiffs wanted a three family house or a swimming pool the commission could disapprove it because there are alternatives. (R. 28, p. 4) The plaintiffs were not willing to consider a house with a smaller footprint and a house with less than three bedrooms which would reduce the septic area by a third, and which would result in both houses and septic causing less impact and being further distanced from the wetlands and river.
As Chairman Lancaster stated:
 Now, we are not denying them necessarily of building a house. All we're going to say if we do, hypothetically, we could say to them your septic system is too close to the wetland. Your house is too close to this side. We're not denying them, we're just saying we're not going to allow those things. Its up to them with what they are going to do with the lot from there. We're not telling them they can't build a house.
R. 28, p. 5)
At the May 20, 1992 meeting discussion noted that although the applicants did change the positioning of the dwelling, they did not reduce the size of the house and that it was a very small parcel for the size of the development planned. (R. 34, p. 2) Under the circumstances of evidence enumerated at length above, the plaintiffs have not met their burden of proof, as alleged in their complaint and as argued in their brief, that no feasible and prudent alternatives exist. Huck, supra at 553. Hoffman, supra. The commission itself made no such finding.
Finally, the plaintiffs claim an unconstitutional taking because of the denial of the application for this particular three bedroom 1144 square foot house with proportionately sized septic. They claim the denial of this particular house and septic means that there is no alternative use and that the value of the property is greatly diminished. This claim ignores a record replete with questioning about a less ambitious application including Chairman Lancaster's statement that, "we're not telling them they can't build a house." (R. 23, p. 5) The burden is on the applicant to demonstrate that there are no alternatives and the record clearly demonstrates the plaintiff has not met that burden. Huck, supra at 553.
Before the claim of an unconstitutional taking can be reached, however, "the plaintiffs must show that they have been finally (emphasis in original) CT Page 1686 deprived by the Commission of their use of the property." Hoffman v. Inland Wetlands Commission, supra at 262, citing Gil v. Inland Wetlands Agency, 219 Conn. 404, 407; Manor Development Corporation v. Conservation Commission, 180 Conn. 692; Brecciaroli v. Commission of Environmental Protection, 168 Conn. 349; Vartelas v. Water Resources Commission,146 Conn. 650. A finding of finality is "an essential prerequisite" to asserting a taking. MacDonald, Sommer Frates v. Yolo County,477 U.S. 340, 348 (1986).
There has been no final deprivation of use of property in this case. "Because a future application with a different plan for construction and excavation may be granted, there has not yet been a final authoritative decision by the Commission [footnote omitted]. Without such a decision, a taking cannot have occurred. . ." Hoffman, supra, citing Gil, supra and Brecciaroli, supra.
The record in this matter demonstrates substantial evidence supporting the Commission's denial of this application in a regulated area. The applicants have not met their burden of showing no feasible and prudent alternative and have not been finally deprived by the Commission of their use of the property.
Accordingly, the appeal is dismissed.
PICKETT, J.