[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff's property is a lot of a little more than an acre on Ledges Road in the Town of Ridgefield. The lot is approximately 85 percent wetlands, with a pond at one end and a creek running along one edge of the lot. He is seeking permission to construct a single family two bedroom residence, well, septic system, and driveway. This is his third application to the Ridgefield Inland Wetlands Commission (Commission); both previous applications were denied.[1] The application that is the subject of this appeal was submitted to the Commission on August 25, 1995. A public hearing was held November 28, 1995, and continued on January 9, 1996. On February 6, 1996, the Commission denied the plaintiff's application.
The Commission stated four reasons for its denial:
 "1. In an attempt to protect, preserve, and maintain the integrity of wetlands and watercourses, the State specifically has not exempted previously approved building lots from wetland regulations. This is a lot that should not be built on because of the nature and number of intrusions into the wetlands and buffer areas;
 2. Based on the evidence furnished by the applicant and shown on the maps presented, the proposed activity would have a significant impact on the associated wetland proposed CT Page 3170 to be altered/filled;
 3. The amount of fill required and the overall disturbance of wetlands are not justified by this lot's use for building purposes;
 4. This proposal would not be in keeping with the Town's Inland Wetlands and Watercourses Regulations as outlined in Section 1.2 . . . ."
The plaintiff appeals this decision denying him permission to build on the lot as proposed. This appeal was heard before this court on November 25, 1996.
"It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute."Munhall v. Inland Wetlands Commission, 221 Conn. 46,50, 602 A.2d 566 (1992). General Statutes § 22a-43 (a) provides, in pertinent part, that "any person aggrieved by any . . . decision or action made pursuant to sections 22a-36 to22a-45, inclusive, by the . . . municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action . . . may . . . appeal to the superior court for the judicial district where the land affected is located . . . ."
"Pleading and proof that the plaintiffs are aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal." Munhallv. Inland Wetlands Commission, supra, 221 Conn. 50. An owner of the subject property is aggrieved and entitled to bring an appeal. Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 530, 525 A.2d 940 (1987).
The plaintiff pleaded aggrievement and at the hearing submitted a copy of his deed as proof of ownership of the subject property. This court issued an order on November 25, 1996, finding that the plaintiff is aggrieved for the purposes of bringing this appeal.
Any person aggrieved by a decision made pursuant to sections22a-36 to 22a-45, inclusive, by the municipality, "may, within the time specified in subsection (b) of section 8-8 from the CT Page 3171 publication of such . . . decision . . . appeal to the superior court for the judicial district where the land affected is located . . . ." General Statutes § 22a-43 (a). An aggrieved party may take an appeal to the Superior Court within fifteen days from the date when notice of such decision was published. General Statutes § 8-8 (b). "Notice of such appeal shall be served upon the inland wetlands agency and the commissioner." General Statutes § 22a-43 (a). In the present case, notice of the Commission's decision was published in the Ridgefield Press on February 15, 1996. On February 28, 1996, the plaintiff commenced this appeal when the sheriff served process on the chairman of the Commission, the Director of Planning, the Assistant Town Clerk for Ridgefield, and the Commissioner of the Department of Environmental Protection. Thus, the plaintiff's appeal is timely.
"In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. . . . [T]he plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . . [T]he reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . ." (Citations omitted; internal quotation marks omitted.) Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587-88, 628 A.2d 1286 (1993).
The plaintiff claims that the Commission acted illegally, arbitrarily, and in abuse of discretion because it ignored credible, uncontradicted, expert testimony and evidence, and improperly treated its buffer areas as actual setbacks which could not be reduced. The defendant Commission argues that the reasons given are supported by substantial evidence.
The Commission's decision must be upheld if there is substantial evidence in the record to support just one of the reasons given. Huck v. Inland Wetlands WatercoursesAgency, supra, 203 Conn. 539-40. Under the "substantial evidence rule . . . evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . ." (Citations omitted; internal quotation marks omitted.) Id., 541.
The second reason given by the Commission for its denial is CT Page 3172 sufficient to justify their decision denying the plaintiff's application, and there is substantial evidence to support this reason.
The second reason was that the development would have a significant impact on the wetlands existing on the property. The plaintiff argues that the impact would be minimal, and that his experts showed that this plan made the least possible impact on the wetlands. He argues that the Commission is "conjuring up" unfavorable evidence when none was presented. The defendant Commission counters by citing the history of the successive applications for this lot, with each one making a lesser impact on the wetlands, and suggests that more could be done to reduce its impact.
The record reveals that the Commission has repeatedly been concerned with the amount of the footprint of the house and related development actually in the wetlands area. The first plan had the house and driveway, plus the septic tank and pumping chamber in the wetlands area with the leaching field adjacent to it. The second plan moved the septic area and the driveway out of the wetlands, leaving only 1500 square feet of the house in the wetlands. These improvements were made possible by a change in the health code pertaining to the design of the septic area. The current plan has only 200 square feet of the footprint in the wetlands. The changes in the third plan were made possible by a variance from the city, which owns a wide stretch of land between the edge of the road and the property line, so that the septic area could be pushed closer to the road.
At the November 28 hearing, still concerned with the presence of a corner of the house in the wetlands, one of the Commissioners asked whether the plaintiff's designer had tried shifting the orientation of the house to get the remaining corner out of the wetlands area. It appeared to him that by pushing it in one direction, "it looks like maybe ten foot, you could probably remove even more of it from the wetlands." The plaintiff's attorney answered that this had been considered, but there were problems with coming up against the wetlands on the other side.
The Commission also read into the record a letter from the Conservation Committee, dated November 2, 1995, which recommended denial. In part, this letter provided: "There is no grading indicated on the present map to the south of the house. Once the CT Page 3173 grading is included, the impact to the wetlands will be greater than is presently shown on the map. Probable grading will make this application similar to the previous one. No access to proposed well in the Idw [UDw] soil, fill with wet substrata, is indicated and will impact the wetlands further."
There was evidence presented that the reserve area of the septic system came within the 50 foot buffer area beside the creek.[2] The plaintiff's sanitary expert testified that due to the hydraulic gradient the effluent would travel in the other direction, rather than towards the creek. One Commissioner, however, questioned whether this was adequate evidence that the location of the septic system would have no adverse affect on the wetlands. Even though no evidence was presented to rebut the favorable testimony of the sanitarian, an agency "is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." (Citations omitted; internal quotation marks omitted.) Samperi v.Inland Wetlands Agency, supra, 226 Conn. 597. Presumably then, the Commission found the plaintiff's expert testimony of the sanitarian unconvincing, and considered the nearness of the septic system to the creek significant.
There is substantial evidence from which the Commission could have concluded that the house, situated in the wetlands, with the necessary grading around its perimeter, the access required to the well, and the location of the septic system would, together, have a significant impact on the wetlands area.
The plaintiff argues that the Commission's denial of this third application is indicative of its determination that this lot should not be built on and thus constitutes a regulatory taking in violation of the state and federal constitutions. The defendant Commission argues that it denied the application on the basis that the only prudent alternative offered by the plaintiff was the construction of 30 percent of the house in wetlands. It also argues that the plaintiff has failed to demonstrate that the denial of this application constitutes a final deprivation of the reasonable and proper use of the lot and that therefore the plaintiff's taking claim is not ripe.
A reviewing court lacks jurisdiction to rule on a claim of unconstitutional taking where a property owner has not obtained a final decision from the administrative agency. Port ClintonCT Page 3174Associates v. Board of Selectmen, 217 Conn. 588, 604,587 A.2d 126 (1991). "[T]he plaintiff is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination. . . . To demonstrate the requisite finality, a property owner asserting a regulatory takings claim bears the burden of proving that the relevant government entity will not allow any reasonable alternative use of his property." (Citations omitted; emphasis in original.) Gil v. Inland Wetlands Watercourses Agency, supra, 219 Conn. 415.
General Statutes § 22a-41 (b) requires that an agency find that a feasible and prudent alternative does not exist before it approves an application to conduct regulated activities in wetland areas. Samperi v. Inland Wetlands Agency,
supra, 226 Conn. 589. The record contains evidence that the Commission members were not convinced that all reasonable and prudent alternatives had been considered, and that there was more the plaintiff could do to adjust the plan so that the footprint of the house was completely outside the wetlands boundary. Although the plaintiff is correct that the language in the first reason given by the Commission, and the letters from the Conservation Committee do suggest that no plan offered by the plaintiff would be acceptable, it is far from clear that some acceptable alternative plan may not be found.
The burden of proof is on the plaintiff to show that his proposed development is the only alternative that is both feasible and prudent. "The evidentiary burden imposed on the applicant to demonstrate that its proposal is the only feasible and prudent alternative will ordinarily require an affirmative presentation to that effect." Samperi v. Inland WetlandsAgency, supra, 226 Conn. 593. See also Hoffman v.Inland Wetlands Commission, 28 Conn. App. 262, 265-66,610 A.2d 185, cert. denied, 223 Conn. 925, 614 A.2d 822 (1992) ("The fact that one commissioner questioned the existence of an alternative is not equivalent to the commission's finding that no alternative existed."). The plaintiff has not proven, and the record does not support, that the plaintiff has met his burden that the defendant Commission will not allow any reasonable alternative use of this property. "The commission was not under a duty to make suggested changes or to grant a rehearing for that purpose. . . ." (Citations omitted; internal quotation marks omitted.) Huck v. Inland Wetlands WatercoursesAgency, supra, 203 Conn. 553. CT Page 3175
An alternative is feasible and prudent if it is sound from an engineering standpoint and economically reasonable in light of the social benefits derived from the activity. Samperi v.Inland Wetlands Agency, supra, 226 Conn. 594-95. This is a residential lot zoned for single family homes; the other allowable uses include agricultural activities, but such things are not feasible in this area. A differently shaped or reoriented footprint is not unreasonable. Although plaintiff's attorney did say that they had considered other orientations, and that shifting the house would bring it up against the wetlands on the other side, this is not definitive evidence that no such alternative exists. It may be that there is no way to put a septic system, a driveway and a reasonably sized two bedroom house outside the wetlands which cover 85 percent of the lot. The plaintiff's engineers have pushed the septic system as close to the road as possible, and the house as close as possible to the septic system. If they cannot compress it any more, there may be no feasible and prudent alternative to placing a portion of the building in the wetlands area. While there is evidence that the Conservation Committee and the Commission consider this a difficult lot and are very concerned about the impact that any development would have on the associated wetlands, it cannot be said that they would not approve a reasonable alternative. The plaintiff here has made an extreme effort to move the development as close to the road as possible, given the regulations that have to be complied with concerning the septic system. Although the possibilities for alternative plans appear to be limited, it cannot be said that the plaintiff has proven that no such alternative exists. For that reason, the plaintiff is not entitled to judicial review of the merits of his regulatory takings claim.
The record demonstrates substantial evidence supporting the Commission's denial of this application on the basis that the footprint of the house lies within a wetlands area. The applicant has not met his burden of showing no feasible and prudent alternative, and thus has not been finally deprived by the Commission of his use of the property.
Therefore, the court dismisses the plaintiff's appeal.
Stodolink, J.