[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, a limited partnership engaged in the business of real estate development, appeals the decision of the defendant South Windsor Inland Wetlands Agency/Conservation Commission which denied the plaintiff's application to construct a thirteen unit housing development in South Windsor. The defendant agency acted pursuant to General Statutes § 22a-42a. The plaintiff appeals pursuant to § 22a-43. The court finds the issues in favor of the defendant commission.
As owner of the property in question, the plaintiff is CT Page 8164 aggrieved by the decision of the defendant commission and has the requisite standing to bring this appeal.
The land in question consists of 5.47 acres, half of which are wetlands subject to protection by statute. In addition, town regulations require that there be a 40 foot buffer area around the wetlands within which construction, unless specifically exempted, is prohibited. The 5.47 acre parcel in question is a portion of a fourteen acre tract owned by the plaintiff.
The plaintiff sought permission to construct a housing project on the 5.47 acre parcel. After several revisions, the final plan as submitted called for thirteen units to be constructed, mostly in the non-wetlands portion but with some intrusion into the buffer area. The plan also called for a roadway cutting through the wetlands, crossing over Plum Gully Brook. And the plan called for the discharge of storm water drainage into the wetlands area.
The plaintiff's final plan evolved during the course of the public hearing on the application as the plaintiff sought to respond to concerns expressed during that hearing. The hearing was held in three sessions in September and October 1996.
Prior to the commencement of the hearing, the town's wetlands enforcement officer, Jeffrey Folger, and the town engineer, Jerry Iazzetta, reviewed the plaintiff's application and, at the initial session of the hearing, expressed serious concerns about the impact the project would have on the wetlands. In general, these included pollution caused by storm water runoff from the developed area, disturbance of the buffer zone, and the availability of alternative sites that would have less severe impact. The hearing was continued at the request of the plaintiff to afford an opportunity to address the professional staff's concerns.
At the next session of the hearing, on October 2, 1996, the plaintiff presented a revised application designed to meet the concerns previously expressed. Folger, the wetlands enforcement officer, continued to express criticism of the plan as revised, stating that "the watercourse is already showing signs of nutrient enrichment (and that) additional inputs . . . is not wise." In essence, he stated that the revisions offered by the plaintiff were not adequate to prevent an unacceptable increase in the level of pollution of the wetlands. Commission members CT Page 8165 raised the possibility of reducing the number of housing units so as to lessen the adverse environmental impact of the project. The hearing was again continued at the request of the plaintiff to allow for further revisions in the plan.
At the final session of the hearing on the plaintiff's application, on October 16, 1996, the plaintiff presented a revision of the plan that (1) reduced the intrusion into the buffer zone by moving some of the housing units; (2) made improvements to a protective swale; and (3) improved the drainage and filtration systems for the runoff of storm water. Folger's response was, "I think they've pretty much done whatever can physically be done with the site that's given . . . other than, you know, the reduction of units, which hasn't happened." There was then considerable discussion among the commission members, plaintiff's attorney, and others relating to the adequacy of the revised plan and the feasibility of alternative plans. The hearing was then closed.
Following the hearing, the commission met and, by a tie vote, failed to approve the application. The commission notified the plaintiff of its decision rejecting the application and set forth its reasons as follows:
 1. The proposed mitigation (of the impact on the wetlands) is not adequate for the scope of the project.
 2. The proposed mitigation is limited by available uplands, and additional mitigation would further disturb wetlands.
 3. There were alternatives available to the plaintiff which would have less impact on wetlands.
 4. The wetlands is already subject to disturbance from existing development, and "this site would add additional pollution to an already stressed wetland system."
The basis of the plaintiff's appeal is its contention that there is no evidence in the record to support any of the commission's asserted reasons for denying the application.
In their memoranda of law submitted to the court, the parties CT Page 8166 have accurately summarized the standards to which this court must adhere in reviewing the commission's decision. These standards have been developed and articulated by our appellate courts in a series of decisions which erect difficult obstacles to a challenge of a decision rendered by a wetlands agency after an evidentiary hearing. The agency's decision must be sustained if the record contains evidence that supports any one of the reasons given for the decision. Such evidence must be substantial, but the possibility of drawing two different conclusions from the evidence does not prevent it from being deemed substantial. The plaintiff has the burden of establishing that substantial evidence that would support the agency's decision does not exist. In determining whether the agency acted on the basis of substantial evidence, the court must not substitute its judgment for that of the agency on issues of fact and the credibility of witnesses. An administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the evidence presented to it so long as the conduct of the hearing is fundamentally fair. The agency may consider the advice and assistance it receives from its own professional staff, but it is the agency itself that must make the final decision, based on the facts that it finds to be established. Samperi v. Inland WetlandsAgency, 226 Conn. 579 (1993); Red Hill Coalition, Inc. v.Conservation Commission, 212 Conn. 710 (1989); Huck v. InlandWetlands Watercourses Agency, 203 Conn. 525 (1987); Laufer v.Conservation Commission, 24 Conn. App. 708 (1989).
As noted, the commission's decision was based to a significant extent on its conclusion that the plaintiff's project was too ambitious; that is, that the plan called for more housing units than the site could ecologically support. This is the theme that is common to the first, second and fourth reasons specified by the commission in its notification to the plaintiff rejecting the application. There is ample and substantial evidence in the record to support this conclusion, consisting of the opinions expressed throughout by the town's professional staff — its wetlands enforcement officer, Folger, and the town engineer, Iazzetta — as well as by members of the commission who had walked the area. Indeed, the significant responses and plan alterations made by the plaintiff during the course of the hearing to address the density issue illustrate how substantial it was.
The plaintiff argues that the plan in its final form CT Page 8167 eliminated any and all problems resulting purely from the number of housing units proposed. The plaintiff cites the statement of Folger on the last day of the hearing, quoted above, as proof that all problems had been eliminated. The commission asserts, however, and the court agrees, that Folger's statement, "I don't see what more could be (done) other than . . . the reduction of units, which hasn't happened," is no such proof. Rather, the statement, read in its totality, envisions the reduction of units as something more that could be done to mitigate the impact on the protected wetlands and buffer zone.
The court concludes, based on its review of the record, that the commission had substantial evidence to support its determination that the plaintiff's final plan would impose an unacceptable strain on the wetlands and buffer zone. The fact that there was considerable contrary evidence in the record is not a basis for overturning the commission's decision. The commission was entitled, indeed required, to render a decision based on the evidence it found most persuasive, and so long as that evidence is substantial, the court may not second-guess it.
The other reason cited by the commission for its rejection of the application was that "[t]here were alternative methods available to develop the property elsewhere on the site which would provide less impacts to the wetland resource."
"In order to issue a permit, the local inland wetlands agency must find that `a feasible and prudent alternative does not exist.' General Statutes 22a-41 (b). We have determined that an applicant for an inland wetlands permit has the burden of proving that it has met the statutory prerequisites for a permit . . . The applicant, accordingly, must demonstrate to the local inland wetlands agency that its proposed development plan, insofar as it intrudes upon the wetlands, is the only alternative that is both feasible and prudent.
"The evidentiary burden imposed on the applicant to demonstrate that its proposal is the only feasible and prudent alternative will ordinarily require an affirmative presentation to that effect. If only one alternative is presented, the inland wetlands agency can approve the application for a permit only if no other feasible and prudent alternatives exist. In practical terms, this will usually require that the applicant present evidence of more than one alternative to the local agency."Samperi v. Inlands Wetlands Agency, supra, 226 Conn. 593. CT Page 8168
The commission determined in this case that the plaintiff failed to meet its burden of proving that no feasible and prudent alternative existed. The record reveals that the commission's conclusion in this regard focused on the remainder of the fourteen acre tract owned by the plaintiff.
In Hoffman v. Inland Wetlands Commission, 28 Conn. App. 262, cert. denied, 223 Conn. 925 (1992), the Appellate Court held that the agency's consideration of adjoining land by the agency is proper and relevant in determining whether to grant a permit. In Grimes v. Conservation Commission, 49 Conn. App. 95 (1998), the court explained that such consideration is relevant only when the proposal under review would have a significant impact on the wetlands. In such a case, the court observed, consideration of adjoining land is relevant in determining whether a feasible and prudent alternative exists.
In the present case, throughout the hearing, the commission consistently expressed the concern, and ultimately found, that the plaintiff's proposal would have a significant impact on the wetlands. Furthermore, during the hearing, commission members and staff alluded to the plaintiff's obligation to present evidence concerning alternatives, including specifically the utilization of the remainder of the plaintiff's land.
The issue whether the larger parcel of land, which adjoins the 5.47 piece, would present a feasible and prudent alternative for the project was thus properly before the commission and relevant to its decision. It was incumbent on the plaintiff, therefore, to present evidence to show that this larger adjoining piece of land would not provide such an alternative. The only evidence on that point, however, consisted of some statements by the plaintiff's attorney on the last day of the hearing in response to questions by commission members. The commission plainly did not consider that evidence as adequate to carry the plaintiff's burden of proof. In accordance with the principles of administrative law summarized above, the court may not overturn the commission's findings in that regard.
The court concludes that the record in this case contains ample and substantial evidence to support the commission's decision. It must, therefore, be sustained.
The appeal is dismissed. CT Page 8169
MALONEY, J.