[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Benjamin Ancona, from a decision on August 6, 1998, by the defendant, Inland Wetlands and Water Courses Commission of the Town of Berlin (Commission"), denying an application to construct a residential dwelling in Berlin. The appeal is taken pursuant to General Statutes § 22a-43.
The plaintiff originally appealed to the Superior Court on December 30, 1993, from a prior decision of the Commission denying an application regarding the same property. Both applications by the plaintiff concerned a proposed house to be located on 7.7 acres of land in the Mattabessett CT Page 14845 River flood plain. The December 30, 1993 appeal was dismissed by Superior Court Judge Susan B. Handy, finding that the reasons given by the Commission were sufficient to support a denial of the application. (Return of Record ("ROR"), Item 10). The plaintiff then reapplied to the Commission in February of 1998. The Commission again denied the application and the plaintiff filed the present appeal with this court.
The land which is the subject matter of the appeal consists of 7.7 acres with four hundred and eighty feet of frontage on Lower Lane. (ROR, Item 21.) The property abuts Belcher Brook, is within the Mattabessett River flood plain area, and is the last lot in a subdivision. The proposed house would be the same distance from the road as the other subdivision houses (approximately fifty feet). (ROR, Item 21.)
In support of his application, the plaintiff filed a development plan prepared by Ancona and Associates, Inc., dated August 14, 1997. (ROR, Item 17.) Thereafter, the plaintiff filed revised development plans. (ROR, Items 20, 21.) The plan, as revised, showed that the property was located in a flood plain and that the flood elevation was 45.8 feet. (ROR, Item 21.) The plaintiffs engineer, Antonio Ancona, testified that the flood elevation was 45.8 feet. (ROR, Item 24, p. 6.)
The property is serviced by sewer, water, and gas and is eligible for a free sewer hookup by the town once a house is built. The sewer hookup was given in consideration for allowing the town to excavate and place a twenty-inch sewer line through the plaintiffs property. (ROR, Item 24, p. 32.) The plaintiff proposed to build a raised ranch style house with no basement and no portion of the house, living or otherwise, lower than one and a half feet above the hundred year flood elevation. (ROR, Item 24, p. 2.) The remaining acreage would be left as open space as a land conservation area. (ROR, Item 24, p. 34.)
The public hearing on the application was convened on April 7, 1998, and continued on May 5, 1998, July 7, 1998, and August 4, 1998, at which time the hearing was closed. During the administrative hearing process before the Commission, the Commission agreed that the plaintiffs plans had no impact on the surrounding wetlands. (ROR, Item 25, pp. 26-27.)
The Commission was concerned about safety issues, particularly emergency vehicle access during flooding. (ROR, Item 26, p. 25.) Indeed, while the house was to be constructed at an elevation of 56.5 feet and the garage at an elevation of 47.5 feet, the ground elevation surrounding the proposed house was lower than the flood elevation of 45.8 feet. (ROR, Item 21.) of particular concern was the street elevation of 43.3 feet; (ROR, Items 21, 24, p. 31), which would result in approximately four feet of water on the roadway in front of the house. (ROR, Item 24, CT Page 14846 p. 31.) Many neighbors testified that flooding is common on the property and the road. (ROR, Item 25, pp. 13-16.)
At the conclusion of the public hearing on August 4, 1998, the Commission voted to deny the plaintiffs application with three members of the Commission voting to deny the application, one member of the Commission voting in favor of the application and one member abstaining. (ROR, Item 26, p. 25.) The reason for denial was the safety issues related to emergency vehicle access during flooding. (ROR, Item 26, p. 25.) By letter dated August 6, 1998, the plaintiff was notified of the Commission's decision. (ROR, Item 16.) This appeal followed.[1]
The plaintiffs first ground of appeal is that the Commission had no authority to consider the safety issues. The plaintiff relies onConnecticut Fund for Environment, Inc. v. City of Stamford, 192 Conn. 247
(1984) for the proposition that an Inland Wetlands Commission may only consider environmental matters which impact on wetlands. The court agrees with this general proposition. In this case, however, the Commission considered this matter under the Berlin Flood Hazard Ordinance.[2]
General Statutes § 7-148 (c)7(i) authorizes municipalities to regulate the maintenance of safe and sanitary housing. In furtherance thereof, the Town of Berlin adopted an ordinance establishing flood plain management regulations for special flood hazard areas. (ROR, Item 28.) Section V(1) of the ordinance designates the Commission as the municipal commission authorized to enforce and administer the ordinance. (ROR, Item 28, p. 13.) Section V(2)(i) of the flood plain regulations states "safety of access to the property in times of flood for ordinary and emergency vehicles" as a factor for the Commission to consider in evaluating proposed activity within the flood plain. (ROR, Item 28, pp. 13-14.)
Under these circumstances, the plaintiff cannot support his contention that the Commission was acting outside its jurisdiction. It was, to the contrary, acting under its delegated authority. During the August 4, 1998 public hearing, the plaintiffs attorney acknowledged that the Commission had jurisdiction. (ROR, Item 26, p. 2.)
The plaintiff next contends that the evidence in the record does not support the decision reached by the Commission. The test to review a decision of a wetlands agency has been stated in Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539 (1987):
 The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. The evidence, however, to support any such reason must be substantial; the credibility of witnesses and the CT Page 14847 determination of factual issues are matters within the province of the administrative agency . . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.
(Citations omitted; internal quotation marks omitted.); see also Gagnonv. Inland Wetlands Watercourse Commission, 213 Conn. 604, 609 (1990).
There is clearly substantial evidence in the record to support the reason given by the Commission to deny the application — the lack of safety due to the lack of access during flooding. Assistant Town Engineer James Horbal testified that in times of flooding there could be 3.5 to 4 feet of water on the road in front of the property and that this would pose a public safety concern, particularly at emergency times. (ROR, Item 24, pp. 31, 36.) Neighbors testified that flooding is common, and there had been at times up to four feet of water on the road. (ROR, Item 25, pp. 13-16.)
The state Department of Environmental Protection reviewed the plaintiffs plans and wrote to the Commission that the proposed home could be surrounded by up to four feet of water during a 100 year storm event and that during lesser flood events, dry access would be restricted. The letter also referred to DEP model regulations which recommend a dry access regulation. (ROR, Item 13.)
A fire chief for the Kensington Volunteer Fire Department also wrote to the Commission to state his concerns on reaching the proposed home in the event of flooding. He stated that flooding regularly occurs in this area. (ROR, Item 11.)
The Commission was certainly entitled to accept the Town's evidence and to give less weight to the plaintiffs evidence. Thus, the Commission could reject the testimony of a fire fighter from another town who described the ability of fire trucks to drive through four feet of water. This does not resolve the problem of police, ambulance, or pedestrian access. (ROR, Item 26, p. 16.) There is substantial evidence in the record to support the safety-access reason given by the Commission.
The final issue raised by the plaintiff is that the decision must be reversed because the actions of the Commission constituted a taking. Such a conclusion that a taking has occurred is only appropriate where no alternative exists for the plaintiff to make use of his property. HoffmanCT Page 14848v. Inland Wetlands and Watercourses Commission, 28 Conn. App. 262
(1992). When this case was before Judge Handy, she noted that the Commission was inviting" a further application. (ROR, Item 10, p. 14, Superior Court decision). The judge, citing Gil v. Inland WetlandsCommission, 219 Conn. 404, 416 (1991), held that because a future application with a different plan for construction and excavation may be granted, there has not yet been a final authoritative decision by the Commission.
Here the plaintiff put the Commission on notice that he would be making a "return appearance" and this was acknowledged by a member of the Commission. (ROR, Item 26, p. 29). It is clear from the record that the plaintiff may continue to revise his plan and approach the Commission again to file another application. Therefore, the claim seeking reversal because of a taking is without merit.
The appeal is therefore dismissed.
Henry S. Cohn, Judge