[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a consolidated appeal by James T. Ryan and Frederick Volpe of two decisions of the Inland Wetlands Agency of the Town of Woodbury ("Wetlands Agency") denying their applications dated March 19, 1997 and May 5, 1998 for a permit to conduct regulated activities associated with the installation of a driveway through wetlands to access two proposed residential building lots.
I. Facts
The facts giving rise to these appeals are largely undisputed. The plaintiffs, in applications dated March 19, 1997 and May 5, 1998, requested wetlands approval for a two lot subdivision bounded by wetlands. The applications proposed the construction of a driveway across East Meadow Brook and the deposit of approximately 25,000 cubic feet of materials into the wetlands in order to provide access to the building sites. In the 1998 application, the proposed driveway would cross a flood plain, then wetlands and finally a brook with a channel of approximately eight feet and a 12-24" depth. The eastern portion of the plaintiff's property is comprised, in part, of a flood plain extending approximately 550 feet to the brook. Both the plaintiff's and defendant's experts agree that the wetlands in question is significant both hydrologically and biologically. They also agree that the driveway will be underwater in all major storm events and flooding will increase in severe storms. It is conceded by plaintiffs that there is a history of flooding in the area. In both applications the houses and septic systems are proposed to be located outside of the wetlands area which is the subject of this appeal.
Both applications were rejected by the Commission. The first application, like the second, was the subject of extensive hearings involving suggestions by the Commission as to modifications and improvements to the application. The 1998 application was filed by the plaintiffs with the belief that the application reflected compliance with the modifications proposed by the defendants. Nevertheless, it was denied because, according to the Commission, the plaintiffs had failed to provide for adequate mitigation of the adverse consequences of the development on the wetlands, refused to accept the conservation easement proposed by the Commission, failed to address address off-site mitigation concerns of the Commission, and failed to adequately explore alternative access to the property through the possible purchase of a neighbor's property.
II. Aggrievement
CT Page 8915
As a condition of appeal, plaintiffs must prove they are aggrieved by the actions of the Commission. As the record owners of the property in question, the plaintiffs are aggrieved by the decisions of the Commission denying their applications for a permit. Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303 (1991).
III. Standard of Review
The standards governing the review of an administrative decision are well established. In order to succeed on appeal, the plaintiff must demonstrate that the agency acted arbitrarily, illegally or that the decision is not reasonably supported by the evidence. The trial court may not substitute its judgement for that of the agency. Madrid Corporationv. Inland Wetlands Agency, 25 Conn. App. 446 (1995). An agency's decision is supported by substantial evidence if it "affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-40 (1987) (internal citations and quotations omitted).
IV. The Commission's Decision
1. Flooding
Connecticut General Statutes § 22a-41 and § 6.1 of the Woodbury Inland Wetlands and Watercourses Regulations require the Commission to consider specific factors when evaluating an application. Amongst these is "[t]he environmental impact of the proposed action including the effects of the inland wetland's and water course's natural capacity to support desirable biological life, to prevent flooding, to supply and protect surface and ground waters, to control sediment, to facilitate drainage, to control pollution, and to promote public health and safety." Section 6.1e (i). With respect to this factor, the Commission concluded that the "proposed activities will cause flooding of adjacent property and not facilitate property damage as noted in the Town Engineer's reports, dated 11/9/98 and as stated by the applicant and his professional engineer."
Experts for the plaintiffs and commission both concluded that the installation of the driveway would result in increased flooding. The principal dispute between the experts concerned the extent of the flooding. The plaintiff's expert characterized the increase in water as minimal and unlikely to occur on a regular basis. Defendant's expert, by contrast, found the risk of flooding to neighboring property east of the CT Page 8916 site to be more significant. The Commission is vested with broad discretion to evaluate the testimony of the witnesses and their credibility. Red Hill Coalition, Inc. v. Conservation Commission,212 Conn. 710 (1989). Under these circumstances, where both experts acknowledge increased flooding, but disagree only as to the extent and scope of it, the court cannot conclude that the commission's finding is not supported by substantial evidence. Id.
2. Reasonable and prudent alternatives
Relying on Regulations § 6.1e (i), the Commission found that the "applicant submitted a preliminary alternative plan gaining access through adjoining property owned by Mr. Theodore R. Burghart, who indicated he would entertain a proposal for the purchase of this land which the applicant did not fully explore. This alternative access would eliminate the entire wetland filling and drainage improvements that result in flooding of adjoining property." In addition, the Commission noted that the Burghart property was previously owned by the plaintiffs, implying that the proposed alternative would have been viable but for their sale of the property. See, paragraph, 5, below, for the court's resolution of this issue.
3. Injury to abutting properties
The third reason cited by the Commission is that the "proposed activities will cause the flooding of adjacent property and not facilitate property damage as noted in the Town Engineer's reports." The Commission also concluded that "the lack of protection of the inlet and outlet of the proposed culverts will result in the continual siltation of the stream and wetlands located on the site and create a condition that may adversely impact the downstream property." In support of its findings, the Commission cited to Section 6.1e(v) of its regulations, which provides, in part, that the Commission must consider "the character and degree of injury to, or interference with, safety, health or the reasonable use of property including abutting or downstream property which could be caused or threatened by the proposed activity or the creation of conditions which may do so."
A review of the record discloses that the applicants and Commission expert disagreed as to the effectiveness of the proposed culverts, the likelihood of flooding on the property and the utility of plaintiffs' proposed Maintenance Covenant. The Commission is vested with substantial discretion to accept, reject or disregard plaintiffs' projections, provided the Commission's findings are supported by credible, reliable evidence. Id. A review of the record indicates that the Commission's findings are supported by substantial evidence, and that the Commission CT Page 8917 was justified in concluding that the proposed driveway construction would create a dam-like effect, potentially causing overflow. In weighing the conflicting opinions of the consultants, the Commission was justified in crediting the concerns of the Town Engineer that the design and maintenance of the culverts would result in flooding. Id.
4. Location of the driveway and stream crossing
In its fourth reason for denial, the Commission concluded that "the applicant has failed to demonstrate that the location of the driveway and stream crossing chosen is the most suitable for the site as it relates to flood control and the sites natural function as a flood plain in the natural drainage system of the East Meadow Brook water shed." In its statement of subordinate reasons, the Commission cited deficiencies with the proposed conservation easement and the site development plans. The Commission's findings are keyed to § 6.1.e(v) which requires the Agency to consider "the suitability of such action to the area for which it is proposed. This requires the Agency to balance the need for the economic growth of the town and the use of its land, with the need to protect its environment and ecology for generations yet unborn."
The Commission's decision detailed the deficiencies it perceived in the applicant's proposed conservation easement. Specifically, it noted that "the conservation easement document submitted does not provide protection of the wetlands from the introduction of herbicides, pesticides and other chemical agents. Additionally, the document submitted does not protect the valuable wildlife habitat and flora of this unique wetland system." The Commission also concluded that "the conservation easement allows the passing of utility services through the protected areas in the future which is inconsistent with the restrictions contained in the document and the intent of the wetlands protection from further disturbance." Finally, the Commission concluded that, because of overtopping of the driveway, the wetland system will suffer from continued siltation.
The Commission's findings and conclusions are amply supported by the record. The proposed conservation easement was rejected, in substantial part, by the applicants. The proposed conditions which it refused plainly are related to the Commission's responsibility to balance the needs of the environment with those of the developer. The plaintiffs have not demonstrated that the Commission's findings are not supported by substantial evidence.
5. Reasonable and prudent alternatives
Pursuant to General Statutes § 22a-41 (b)(2), "[i]n the case of an application which is denied on the basis of finding that there may be CT Page 8918 reasonable and prudent alternatives to the proposed regulated activity which have less adverse impact on wetlands or watercourses, the commissioner or the inland wetlands agency, as the case may be, shall propose on the record in writing the types of alternatives which the applicant may investigate. . . ."
In accordance with this provision, the Commission suggested that the applicants investigate "improvements to the conservation easement document that includes the protection of the wetlands from the introduction of herbicides, pesticides, and other chemical agency. Additionally, eliminate the construction of utilities through the conservation easement area and the indiscriminate cutting of vegetation." In addition, the Commission recommended that the applicants "pursue the discussion of access through the Burghart property or submit evidence of the Burghart's unwillingness to sell."
The plaintiffs challenge the Commission's suggestion that they "pursue the discussion of access through the Burghart property or submit evidence of the Burghart's unwillingness to sell."[1] Plaintiffs correctly point out that the question of their purchasing Burghart's property in order to provide better access to the proposed site was the subject of discussions at the time of the previous application. The plaintiffs also correctly note that these and subsequent discussions seemed to yield inconsistent responses, with the Burgharts indicating on one occasion that their property was not for sale, and on another occasion indicating that it was available for $350,000.
Whatever the status of those discussions, plaintiffs argue that the question raised in this appeal is whether the Commission can lawfully impose on an applicant the condition of purchasing property in order to fulfill the applicant's statutory obligation to "present alternatives to the proposed regulated activity." General Statutes § 22a-41 (b)(2).
As previously noted, General Statues § 22a-41 (b)(2) requires that when an application is "denied on the basis of the finding that there may be feasible and prudent alternatives to the proposed regulated activity" the commission must propose "the types of alternatives which the applicant may investigate." It is well established that the applicant, not the commission, bears the burden of demonstrating that reasonable and prudent alternatives do not exist. Huck v. Inland Wetland WatercoursesAgency, 203 Conn. 525 (1987). While the burden is on the applicant to establish the absence of reasonable and prudent alternatives, the "applicant need not submit plans for all possible alternatives." Hoffmanv. Inland Wetlands Commission, 28 Conn. App. 262, 265 (1992). The issue in Hoffmann was whether an inland wetlands commission is entitled to consider, in evaluating reasonable and prudent alternatives, the CT Page 8919 applicant's ownership of an adjoining parcel. The court concluded that "[o]ur statutes do not require the commission to consider each application as an entity unto itself. In Madrid Corporation v. InlandWetlands Agency, we upheld the consideration of wetlands that were not located on the applicant's property. Whether an owner seeking a permit has an interest in an adjoining lot is relevant to a determination of whether a permit should be granted.
"Indeed, the legislative findings in General Statutes § 22-36
recognize the wetlands and watercourses are an `interrelated web of nature,' which must be protected and preserved. To require a commission to regard each parcel with blinders, ignoring the overall development of an area and, in particular, the ownership of abutting parcels, would defeat the statute's purposes. The commission must be allowed to use its own knowledge of a site and local conditions, including other properties owned by the applicant, in its deliberations." Id., at 266-67.
The Hoffman court did not consider the precise issue raised by the plaintiffs in this appeal, namely, whether the Commission can require, as a condition of approval, that an applicant acquire an adjoining property. On the state of the present record it is not necessary to resolve that precise issue because of the ambiguity of the Commission's findings and recommendations concerning the possible acquisition of the Burghart property. Paragraph 5.B. of the Commission's decision directs the applicants to "[p]ursue the discussion of access through the Burghart property or submit evidence of the Burghart's unwillingness to sell." The record reflects that the owner of the property in question, Theodore Burghart, indicated in an October 8, 1998 letter to the zoning enforcement officer, that he would consider selling the property for $325,000 which he noted is "considerably above the value set by a certified appraisal we had done last year. . ."
Against this factual backdrop, the Commission's recommendation that the applicants pursue discussion of access through the Burghart property or submit evidence of his unwillingness to sell is ambiguous. Specifically it is unclear whether:
(1) the Commission was aware of and considered Burghart's letter.
(2) It is equally unclear whether, if Burghart's letter and position regarding sale were considered, the Commission is indicating that it believes that a prudent and reasonable alternative is acquisition of the property for $325,000.
(3) Finally, it is unclear whether, if the cost is, in fact, $325,000, the Commission would conclude that the acquisition of the Burghart CT Page 8920 property is not a reasonable and prudent alternative. Because the answers to these questions are necessary in order to determine whether the Commission exceeded its authority, and because the acquisition of the Burghart property has been a recurring subject of discussion and consideration during the applications that are the subject of this appeal, the matter is remanded to the Commission to articulate, with specificity, the answers to the questions identified above. Depending on its answers to the preceding questions, the Commission is directed to either reaffirm, modify or delete the recommendations set forth in paragraph 5.B of its December 14, 1998 decision. The record shall be reopened to the extent necessary to allow the parties to address and respond to the preceding questions.
The court will retain jurisdiction of this matter.
SO ORDERED.
ROBERT L. HOLZBERG, J.