[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This appeal arises from denial by the town of Ridgefield's Inland Wetlands Board (Board) of the plaintiff's request for a permit to conduct regulated activities in and around wetlands. The proposed activities CT Page 12146 concerned five proposed crossings necessary to construct a loop road from Bennett Farm Road to two proposed residential subdivisions. The plaintiff's parcel contains some 682 acres, 243 of which are in Ridgefield's three acre and one acre residential zones. The plaintiff proposes to build thirteen homes on a portion of this site, eight of which would be accessed by the loop road for which the subject crossings are proposed. Without such a road, the plaintiff has no access to its residential property.
Approximately 613 acres of the property are located within the town of Ridgefield, with the remaining 69 acres being located in Danbury. The property contains significant wetlands and is a major component of Saugatuck River Watershed.
Public hearings were held on December 21, 1999, February 1, 2000, and March 7, 2000. In addition to testimony from laymen, many of whom are neighbors, the Board heard testimony from experts hired by the Board, experts on behalf of the appellant, and from many opponents to the project. The record also included comments from the Ridgefield Conservation Commission, Bridgeport Hydraulic Company, members of the Ridgefield Open Space Association (ROSA), and others.
In addition to the 243 acres in residential zones, 370.4 acres are zoned CDD (Corporate Development District).
The plaintiff filed a "Pre-Application for Subdivision" with the town's planning and zoning office providing details of the subdivision plan for the thirteen homes and submitted a copy to the Board. Total area impacts of these proposed crossings are 1,769 square feet plus or minus (.041 plus or minus acres) of wetlands, and 390 plus or minus square feet (.009 plus or minus acres) of intermittent water courses. In addition, 570 plus or minus square feet (.013 plus or minus acres) of perennial water course stream bed will be temporarily impacted but were to be restored in time and in place, yielding zero net impact. The proposed wetland impacts were to be mitigated on the site through the creation of 3,540 square feet (.081 plus or minus acres) of scrub/shrub wetland adjacent to the perennial stream. The proposed impacts to intermittent water courses were to be mitigated by 780 plus or minus square feet (.018 plus or minus acres) of shrub plantings for soil stability, soil permeability, and wildlife cover near the proposed intermittent water course crossings. The proposal for mitigation was to yield a 2:1 replacement ratio.
In response to criticisms and objections by opponents to the project, that the plaintiff had failed to disclose its intended use of the property, the plaintiff filed with the Board its pre-application for sub-division that it had previously filed with the planning and zoning CT Page 12147 commission. This subdivision plan, with supporting documents, illustrated the location and details of the proposed thirteen lot subdivision. Its filing with the Board was done prior to completion of the public hearings. No plans were presented to the Board as to contemplated uses for the balance of the property, including the commercially zone portion, as the plaintiff had not determined what it was going to do with this property.
ROSA, a Connecticut non-stock corporation, intervened the proceedings to support its belief that the road crossings, with potential for future development, would likely have an adverse impact on the environment.
On April 13, 2000, the Board denied the plaintiff's application and specified the following four reasons:
 1. The subject parcel is significant not only to Ridgefield, but also to the Region. It is a major component of the Saugatuck River Watershed. It is a unique environment due to its beauty, ecology and habitat diversity and its location adjacent to Wooster Mountain State Park. Based on testimony at the hearing, the activities — proposed and anticipated — would result in habitat fragmentation and disruption of the life cycles of indigenous creatures. The Board found that the implementation of the application would fragment and destroy indigenous habitat. This is contrary to section 1.2 of the Ridgefield Inland Wetlands Regulations, and section 22a-36 through Section 22a-41
(a) of the Connecticut General Statutes.
 2. While the application pertains to several crossings that would have a direct impact on wetlands and watercourses, the applicant alluded to, but failed to fully disclose the extent of development and the nature of activities and land uses in upland areas that would have a significant impact on wetlands and watercourses. The Board was left dealing with the abstract as to the impact of yet unknown projects. Upon questioning by the Inland Wetland Board during the public hearing, the applicant agreed that the proposal currently under appeal, as well as the suggested subdivision and future commercial development under current zoning, may be considered by the Board, as either may have a significant impact on wetlands and watercourses. Reference is made to CT Page 12148 Section 10.2(g) of the Ridgefield Inland Wetlands and Watercourses Regulations as well as Section 22a-41
(a)(b) and Section 22a-429a (f) of the Connecticut General Statutes.
 3. The applicant has not demonstrated that the implementation of the proposal would achieve balance between the economic stability of the town and its use of its land, with the need to protect the environment and the ecology in order to guarantee to the people of Ridgefield, the Region and the State the protection of such natural resources for the enjoyment and benefit of future generations. Reference is made to section 1.2 of the Ridgefield Inland Wetland and Watercourses Regulations.
 4. The applicant presented alternatives to its proposal, but the applicant found them to be not feasible and prudent. Based on evidence and testimony, the Board found that other alternatives may exist which would be both feasible and prudent, but which the applicant declined to explore. The Board found the application as submitted contrary to the criteria in section 10.2(b) and the mandate under Section 10.3 of the Ridgefield Inland Wetlands and Watercourses Regulations and section 22a-41 (b) of the Connecticut General Statutes.
The plaintiff claims that the Board's denial of the application was arbitrary, illegal and that none of the Board's reasons is supported by substantial evidence.
 AGGRIEVEMENT
General Statutes § 22a-43 governs wetlands appeals. It provides that: "[A]ny person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive . . . may, within the time specified in subsection (b) of section 8-8 . . . appeal to the superior court for the judicial district where the land affected is located. . . ." The evidence establishes that the plaintiff was the owner of the subject property and is aggrieved.
 STANDARD OF REVIEW
The legislature has found that "[t]he inland wetlands and watercourses of the State of Connecticut are an indispensable and irreplaceable but CT Page 12149 fragile natural resource with which the citizens of the state have been endowed," and that "[t]he preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state." General Statutes § 22a-36. Designated wetlands agencies of each municipality are expressly authorized to promulgate regulations that "are necessary to protect the wetlands and watercourses within its territorial limits." General Statutes § 22a-42 (c).
"The purpose of the Inland Wetlands and Watercourses Act (act) is to provide an orderly process in which the rights of landowners to use or develop their land can be balanced with a need to protect the invaluable public resource of wetlands. See General Statutes § 22a-36. The statute, and the regulations adopted to implement it, provide for an application and hearing process through which the competing interests are balanced. See General Statutes § 22a-42a." Woodburn v. ConservationCommission, 37 Conn. App. 166, 170, 655 A.2d 764, cert. denied,233 Conn. 906, 657 A.2d (1995).
"General Statutes § 22a-42, `Municipal Regulation of Wetlands and Watercourses,' sets forth the functions and responsibilities of municipal inland wetland agencies. The jurisdiction "of an inland wetlands agency is extremely limited in that it can consider only matters that impact on designated wetlands areas.' Tanner v. Conservation Commission,15 Conn. App. 336, 339, 544 A.2d 258 (1998). The commission, in reviewing permit applications acts in an administrative capacity and the trial court, on appeal, determines, on the basis of the record, whether substantial, reliable evidence exists to reasonably support the commission's decision. Strong v. Conservation Commission,28 Conn. App. 435, 440, 611 A.2d 427, cert. granted, 224 Conn. 902,615 A.2d 1046 (1992), appeal dismissed, 226 Conn. 227, 627 A.2d 431
(1993).
"The plaintiff bears the burden of proving that the commission acted improperly. Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995); and, further, "must establish that substantial evidence does not exist in the record as a whole to support the agency's decision.' Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587,628 A.2d 1286 (1993)." Avalon Bay Communities, Inc. v. Orange, Superior Court, judicial district of New Britain at New Britain, Docket No. 492660 (August 13, 1999, Munro, J.).
The trial court reviews the record to determine whether the commission "acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198, CT Page 12150 206, 658 A.2d 559 (1995). "In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reasons must be substantial. . . ." (Internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, 226 Conn. 579,587-588, 628 A.2d 1286 (1993). Evidence in the record will prove "sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Id., 588. "The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Brackets in original; internal quotation marks omitted.) Id.
"The plaintiff shoulders the burden of proof when challenging a decision of an administrative agency. Newtown v. Keeney, 234 Conn. 312,319, 661 A.2d 589 (1995); Samperi v. Inland Wetlands Agency, 226 Conn. 579,587-88, 628 A.2d 1286 (1993); Red Hill Coalition, Inc. v. ConservationCommission, 212 Conn. 710, 718, 563 A.2d 1339 (1989). A showing by the plaintiff that another decision maker might have reached a different conclusion does not satisfy this burden. Newtown v. Keeney, supra, 319;DeBeradinis v. Zoning Commission, 228 Conn. 187, 198, 635 A.2d 1220
(1994). Instead, the plaintiff must establish that substantial evidence does not exist in the record to support the agency's decision. Samperiv. Inland Wetlands Agency, supra, 587; Feinson v. ConservationCommission, 180 Conn. 421, 425, 429 A.2d 910 (1980). Should substantial evidence exist in the record to support any basis or stated reason for the agency's decision, the court must sustain the decision. DeBeradinisv. Zoning Commission, supra, 199; Primerica v. Planning ZoningCommission, 211 Conn. 85, 96, 558 A.2d 646 (1989). The reviewing court may grant relief from the agency's decision only where the decision is arbitrary, illegal or not reasonably supported by the evidence. Red HillCoalition, Inc. v. Conservation Commission, supra, 718."
"This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. (Brackets in original, citations omitted; internal quotation marks omitted.)Newtown v. Keeney, supra, 234 Conn. 319-20." Keiser v. ConservationCT Page 12151Commission, 41 Conn. App. 39, 41-42, 674 A.2d 439 (1996)
"The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Internal quotation marks omitted.) Dumont v. Commissioner of Motor Vehicles,48 Conn. App. 635, 640, 712 A.2d 427, cert. denied, 245 Conn. 917,717 A.2d 234 (1998).
"Judicial review of an administrative agency decision requires a court to determine whether this is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) Altschul v. Salinas, 53 Conn. App. 391, 396, 730 A.2d 1121, cert. denied, 249 Conn. 931, 761 A.2d 751 (1999). The court is "limited to determining whether the commission's conclusions of fact were unreasonable, arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) Sweetman v. State Elections EnforcementCommission, 249 Conn. 296, 332, 732 A.2d 144 (1999).
 THE BOARD'S JURISDICTION
A local wetland agency, in considering an application to permit any regulated activity, must "take into account the environmental impact of the proposed project, it is the impact on the regulated area that is pertinent, not the environmental impact in general." Connecticut Fund forthe Environment, Inc. v. Stamford, 192 Conn. 247, 250, 470 A.2d 1214
(1994). "Other environmental impacts must be raised before appropriate administrative boards." Id.
The act is intended to "protect and preserve inland, wetlands and water courses" by providing an "orderly process to balance the need for the economic growth of the state and the use of its lands with the need to protect its environment and ecology. . . ." General Statutes § 22a-36. The necessity for protecting wetlands "must be balanced against the productive use of privately owned land." Red Hill Coalition, Inc. v.Conservation Commission of Town of Glastonbury, 212 Conn. 710, 719,563 A.2d 1339 (1989). The principal objection raised by the Board, by ROSA, and by many of those commenting on the application at the public hearings was that the applicant failed to disclose the extent of the development and the nature of activities and land uses intended by the plaintiff.[1]
 DISCUSSION
Plaintiff describes the application as very narrow in scope: "its appeal from the denial of a request for a permit . . . requesting fiveCT Page 12152proposed crossings necessary to construct a loop road. . . ." (Emphasis added.) (Plaintiff's Brief, p. 1.) "The extent of the project before the Board is construction of roads to access a subdivision. . . ." (Plaintiff's Brief, p. 19.) Plaintiff had submitted a pre-application for subdivision to the Ridgefield Planning and Zoning Commission's staff but no decision was presented to the defendant Board prior to its decision.
General Statutes § 22a-41 (b)(1) provides that where a commission finds significant impacts on wetlands or watercourses, before it may grant an application it must find on the basis of the record that a feasible and prudent alternative does not exist. Section 22a-41 (a)(2) provides that the commission shall consider "[t]he applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses." Similarly, § 10.2(b) of the Ridgefield Inland Wetlands and Watercourses Regulations provides:
 b. The alternatives to the proposed action including a consideration of alternatives which might enhance environmental quality or have a less detrimental effect, and which could feasibly attain the basic' objectives of the activity proposed in the application. This consideration should include, but is not limited to, the alternative of requiring actions of a different nature which would provide similar benefits with different environmental impacts, such as using a different locality for the activity. (Emphasis added.)
If this application is limited to the road and its five crossings, the decision of the Board must be affirmed because there is no doubt that the road could be relocated and redesigned such that neither the road nor the proposed crossings would have any impact, or a significantly lesser impact, on the wetlands. This might require more twists and turns and might be more expensive, but there is no reason it could not be constructed with less of an impact. It is clear, such a revision may not comport with the plaintiff's wishes as the layout offered was clearly designed to provide access for at least the 13 lot residential subdivision.
Opponents to the proposal complained that the applicant did not reveal intended use of the remainder of the parcel, and the Board's denial reflects a similar objection. It was not, however, inappropriate or improper for the plaintiff to file its wetlands application prior to filing or receiving approval of its subdivision application. Such a procedure is often followed, and the subdivision application statute, CT Page 12153 section 8-26, provides only that a wetland application be submitted notlater than the day the application is filed for the subdivision or resubdivision.[2] "The problem of timing on processing zoning or planning applications which also require approval from the inlands wetlands agency is solved if the applicant completes the application process with the inland wetlands agency first and obtains all necessary approvals for regulated activities involving wetlands and watercourses." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 11.6, p. 224. "Even where a prior application for the same property was reviewed by the inland wetlands agency, it must review a new subdivision application to the commission. County Wide Home Improvementsand Maintenance Co., Inc. v. Planning and Zoning Commission of the Townof Southington, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 447452 (March 18, 1993, Berger, J.); Fuller § 11.6, p. 30 (1998 pocket part).
In the instant case, the plaintiff submitted preliminary subdivision plans for the 18 homes to the Planning and Zoning Commission prior to the board's decision. The plaintiff asserted here that "[t]he extent of the project before the Board is construction of roads to access a subdivision, which necessitates five small wetlands crossings" and that it "simply did not know at the time of this application what it might do with the CDD zoned portion of the property." (Plaintiff's Brief, p. 19.) Even were this application and appeal considered in light of this proposed residential subdivision, the decision of the board upheld must be sustained because the record contains support for its decision that the plaintiff had not met its burden of showing that other alternatives were not feasible and prudent. The Board's environmental expert, retained to assess the impact of the proposed activity, submitted a report which indicated the impact at Crossing A would be less severe if the crossing were relocated to an area where the channel is more stable and well defined, that the culvert at Crossing C should include consideration of fish passage so that in-stream habitat within the perennial watercourse would not be fragmented, and that restoration of a degraded wetland on the site was preferable to the proposed mitigation plan. The Board also received the opinion of the Conservation Commission that the crossing at road C "appears to involve several streams spread over a considerable distance rather than a single well-defined stream. The culvert proposedby the applicant would not seem to be sufficient under thesecircumstances" and "[t]he main stream into Bennett's Pond crossed by Road A is well defined and subject to considerable variance in flows. We felta bridge would be more suitable than a box culvert for this crossing." (Emphasis added.) (ROR Exhibit H, p. 290.)
Whether these comments were a sufficient indication that reasonable and prudent alternatives were available and preferable was a consideration for CT Page 12154 the Board. The Board's decision indicates that they believed that they were. Evidence in the record provides support for such a conclusion. Eric Kristoffersen, a licensed land surveyor spoke at the public hearing and proposed both alternative crossings with less impact on the watercourses and a different road configuration which would eliminate, or lessen, other wetland and watercourse impact. The credibility of witnesses is a matter within the province of the agency and it had the right to make a determination as to the value of this testimony, as to the expertise of the witness, and as to whether to use these suggestions in making its decision. R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 33.9. The Board had the right to believe the evidence of the existence of less harmful alternatives.
The applicant bore the burden of proof of showing that no feasible and prudent alternative to their plan existed and it failed to satisfy this burden. Hoffman v. Inland Wetlands Commission of Avon, 28 Conn. App. 262,265, 610 A.2d 185, 187, cert. denied, 223 Conn. 925, 614 A.2d 822
(1992). There was clearly sufficient evidence in the record to support its decision. The plaintiff's indication, at a public hearing, that it would consider, if the Board desired, two of five suggestions made by speakers at the public hearings was not sufficient to satisfy its obligation. If the plaintiff were making such a proposal, the same would more appropriately be made in a formal manner and in accordance with the Board's procedures so as to permit the appropriate study, analysis and comment. However, as to the recommendations made by the Board's environmental experts, which formed the basis for the denial of the present application, the Board might be hard pressed to refuse an application offering to conform to such suggestions.
The evidence before the Board clearly justifies the concerns of both the Board and ROSA for the preservation of the wetlands on the parcel in question. There ecological significance of the wetland/watercourse system that occupies portions of the parcel was clearly demonstrated. ROSA's position was that the Board should require that the land be preserved in its present state and that the Town acquire "the site as open space." It indicated that there had been efforts leading to acquisition. (Intervenor's Brief, p. 20.) No formal claim, as yet, has been made of an inverse condemnation. ROSA's efforts to promote the "no-build" option, therefore, might more appropriately be addressed to those in the town and/or state with the power to authorize the purchase or to exercise the power of eminent domain. At the present stage, the Board has not indicated that it will not permit any use of the property. General Statutes §§22a-36 — 22a-45; Red Hill Coalition, Inc. v. ConservationCommission, supra, 212 Conn. 718; R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 11.1. CT Page 12155
 CORPORATE DEVELOPMENT DISTRICT
Of the 682 acre parcel on which the proposed road and crossings are located, 370.4 acres are zoned CDD (Corporate Development District). Regulation § 13-133 (G) in the Code of Ordinances of the Town sets a limit for the length of local dead-end streets and cul de sacs, and as a result it is necessary to build a loop road for the proposed subdivision to have access to a public highway. The plaintiff's application, presented in conjunction with its proposed subdivision, did not request a permit for nor contain any proposal or plans for the BCC zoned property. Though both the Board and opponents at the public hearings requested information and indicated a concern as to the future use of this property, and about potential implications for the wetlands, the plaintiff indicated that it had not decided on any future plans for the parcel.
The Board's decision to deny the permit was premised, in part, on the plaintiff's failure to disclose development plans for these upland areas. The Board was concerned that these would have a significant impact on wetlands and watercourses, and felt that it "was left dealing with the abstract as to the impact of yet unknown projects. . . . [T]he applicant agreed that the proposal currently under appeal, as well as the suggested subdivision and future commercial development under current zoning, may be considered by the Board, as either may have a significant impact on wetlands and watercourses."[3]
The Board certainly had good reason for its interest in possible development of the large parcel of BCC land. The size of the parcel, and the extent of the wetlands, warranted their attention. The Plaintiff agreed that under Connecticut law an inland wetlands commission may consider the potential impact of activities on the wetlands themselves. (Plaintiff's Brief, p. 19.) "Our statutes do not require the commission to consider each application as an entity unto itself, devoid of any context. In Madrid Corporation v. Inland Wetlands Agency,25 Conn. App. 446, 594 A.2d 1037, cert. denied, 220 Conn. 915, 597 A.2d 334
(1991), we upheld the consideration of wetlands that were not located on the applicant's property. Whether an owner seeking a permit has an interest in an adjoining lot is relevant to a determination of whether a permit should be granted. See Gil v. Inland Wetlands Agency, 219 Conn. 404,407, 593 A.2d 1368 (1991)." Hoffman v. Inland Wetlands Commission,28 Conn. App. 262, 267, 610 A.2d 185 (1992).
Although it may have been appropriate for the Board to have considered the existence of this BCC zoned property, and the potential effects of future development, there is no requirement that a property owner develop all of his property at the same time or seek all governmental approvals for development of all owned property simultaneously. Certainly, if the CT Page 12156 other portion of the plaintiff's property, the 370.4 acres of CDD zoned property, had been owned by another, it would not be appropriate to withhold approval conditioned on that other owner's determination of what use, if any and if ever, was to be made of the property. In that situation, the condition would be totally beyond the applicant's control. It is similarly possible that conditions of finances, differences of opinions of partners or shareholders, or any other number of reasons could also make such a determination beyond the present control the of the present plaintiff. It is not appropriate to penalize the applicant because it owns adjacent lands. "While this may be germane to a takings analysis, possible alternative use of adjacent land is not a feasible alternative to use of the land in question, it is not relevant to its effect on wetlands, and penalizes a landowner for owning an adjacent lot." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 33.9.
Should any future proposed development for this CDD portion have a significant impact on the wetlands or watercourses, either within that area or on that portion which is the subject of this application, the plaintiff would be required to apply to the Board for permits. The Board would still have the opportunity for review and the public to comment. The risk in the development of one portion of a parcel falls upon the landowner-applicant since future applications may be rejected because of impacts onto or related to conditions which later development proposals may have on sections previously completed.
 CONCLUSION
For the foregoing reasons, the appeal is dismissed.
Hiller, J.